UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-70-GFVT

SUSAN REYNOLDS (RANDOLPH),
Individually and as Administratrix of the
estate of DAVID T. REYNOLDS,                                               PLAINTIFFS,

V.                    **MEMORANDUM OPINION
                        AND ORDER**

FREIGHTLINER, LLC, ET AL.,                                                  DEFENDANTS.

I.  INTRODUCTION

Currently before the Court is the motion of the Plaintiffs, Susan Reynolds (Randolph), individually and as Administratrix of the estate of David T. Reynolds, to set a reasonable fee for the discovery deposition of Defendant Freightliner's experts and/or to limit the number of experts. (Record No. 66.)[1]  Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter was previously referred to the undersigned to resolve discovery disputes. (Record No. 8 at ¶ 5.) For the reasons set forth below, Plaintiffs' motion (Record No. 66) shall be granted in part and denied in part.

---

[1] When this motion (Record No. 66) was filed, it was erroneously docketed as "no longer referred" to the undersigned. (See Docket Note entered 3/23/06.)  Thus, because this motion did not appear on the undersigned's pending motion report until the error was subsequently corrected by the court clerk on May 25, 2006, preparation of this Opinion has been significantly delayed. (See Docket Note entered 5/25/06.)  At this late stage of the case, it is hoped that this regrettable delay has not caused significant problems for the Court and counsel.

II.  ANALYSIS

The Federal Rules of Civil Procedure provide the mechanism for taking discovery from expert witnesses.  Rule 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."  That Rule, however, must be read in conjunction with Rule 26(b)(4)(C).  Under Rule 26(b)(4)(C), "[u]nless manifest injustice would result . . . the court shall require that the party seeking discovery pay the expert a **reasonable fee** for time spent in responding to discovery . . . ."  Fed. R. Civ. P. 26(b)(4)(C) (emphasis added).

A.  Manifest Injustice

As noted above, Rule 26(b)(4)(C) mandates that courts "shall require that the party seeking discovery pay the expert a reasonable fee," unless doing so would create manifest injustice.  Indeed, absent a finding of manifest injustice, an award of such costs is mandatory.  Fisher-Price, Inc. v. Safety 1st, Inc., 217 F.R.D. 329, 332 (D. De. 2003) (citing United States v. City of Twin Falls, 806 F.2d 862, 879 (9th Cir. 1986), cert. denied, 482 U.S. 914 (1987)).  According to the Advisory Committee's Notes[2] and the language of Rule 26(b)(4)(C), an indigent party may be relieved of the shifting nature of the expenses when necessary and appropriate under the "manifest injustice" exception.  See Fed. R. Civ. P.

---

[2] In interpreting the Federal Rules of Civil Procedure, the Advisory Committee Notes, although not conclusive, are a very important source of information and should be given considerable weight.  Mississippi Publ'g Corp. v. Murphree, 326 U.S. 438, 444 (1946).  They provide something akin to a legislative history of the Rules.  4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d, § 1029.

26(b)(4)(C) advisory committee note.  The "manifest injustice" requirement, however, is a "stringent standard," and only applies in special circumstances.  See Reed v. Binder, 165 F.R.D. 424, 427-28 (D.N.J. 1996) (comparing use of "manifest injustice" language in other Federal Rules of Civil Procedure to determine how to apply "manifest injustice" standard under Rule 26(b)(4)(C)).  Unfortunately, there is no clear definition of "manifest injustice."  Delgado v. Sweeney, 2004 WL 228962, at *1 (E.D. Pa. Jan. 6, 2004) (unreported) (citing Reed, 165 F.R.D. at 425).  Thus, in deciding whether to relieve a party of paying shifting expenses, a court must exercise restraint while balancing the respective hardships of doing justice to parties and the need to maintain orderly and efficient procedural arrangement.  See id.

In this case, Plaintiffs rely on Reed, 165 F.R.D. 424, as justification for shifting the cost of deposing Defendant Freightliner's experts to that Defendant.  The court in Reed held that manifest injustice would result if the impoverished plaintiffs had to pay six defense experts for giving their depositions.  165 F.R.D. at 428.  The court found that the "imposing economic obstacle facing these plaintiffs seeking redress for the death of their wife and mother (and chief financial support) requires that these costs be shifted to the defendants."  Id.

Plaintiffs argue that Reed is analogous to the facts of the present case.  (Record No. 66 at 4-5.)  Plaintiffs maintain that the decedent, Dave Reynolds, was the "primary bread winner for the Reynolds family" and that the "decedent's widow was suddenly left without

a major source of income." (Id. at 5.) Plaintiffs also claim that Susan Reynolds is a licensed practical nurse "who is unable to pay for the costs of deposing four defense experts, especially when one of the experts is charging $575 per hour." (Id.)

Reed, however, is distinguishable from the present case. The plaintiffs in Reed alleged that they were forced to undertake the depositions because of the inadequacies of the defense experts' reports. 165 F.R.D. at 429. The court essentially agreed with plaintiffs and found that all of the six defense expert reports, to some extent, failed to meet the disclosure requirements of Rule 26(a)(2)(B). Id. at 430. Consequently, the court determined that "the appropriate **sanction** was to require the defendants to bear the fees charged by their experts." Delgado, 2004 WL 228962, at *1 (emphasis in original) (citing Reed, 165 F.R.D. at 431).

Based on the facts in the present record, fee shifting is not appropriate in this case. Plaintiffs have neither alleged nor shown "a scarcity of information" in any of Defendant Freightliner's expert reports. In fact, a review of those reports reveals that they are thorough and detailed. Thus, contrary to Reed, Plaintiffs in this case are not forced to undertake the depositions of Defendant Freightliner's experts because of inadequacies in the experts' reports.

Moreover, Plaintiffs do not qualify for relief under this rule as an indigent party. Plaintiff Susan Reynolds is a licensed practical nurse. (Id. at 5.) Plaintiffs also received a $325,000 settlement from co-Defendant IMMI. (Record No. 68 at 7.) Notwithstanding certain reimbursements and distributions which were required to be made from the

4

settlement proceeds, Plaintiffs cannot reasonably be characterized as indigent parties. While Plaintiffs are not indigent, there is still some potential unfairness which could result. Nonetheless, the balance of all the equities in this case convinces the undersigned that any such unfairness does not rise to the level of manifest injustice.

Thus, after weighing the possible hardships imposed on the respective parties and balancing the need for doing justice on the merits, the cost of deposing Defendant Freightliner's experts should not be shifted to the Defendant Freightliner in this case. Although it is within the discretion of the court to shift the cost, Plaintiffs have failed to satisfy the "stringent standard" of showing that "manifest injustice" would otherwise result. See Fed. R. Civ. P. 26(b)(4)(C); see also Fisher-Price, 217 F.R.D. at 330 ("'Manifest injustice' is a 'stringent standard.'") (internal citation omitted).  Finally, by following the general and unambiguous rule which requires the party seeking discovery to pay the associated costs, this order comports with the goal of "maintaining orderly and efficient procedural arrangements." Reed, 165 F.R.D. at 427-28 (citing Gorlikowski v. Tolbert, 52 F.3d 1439, 1444 (7th Cir. 1995)); see also Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 646 (E.D.N.Y. 1997) (quoting Twin Falls, 806 F.2d at 879) ("Compensating an expert for his time spent in deposition is mandatory under the rule to 'avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement.'")  Accordingly, Plaintiffs shall be required to pay reasonable fees to Defendant Freightliner's experts.

5

B.  Reasonableness of Fees

Having determined that payment of Defendant Freightliner's experts' fees is appropriate, the court next must consider whether the requested fees are reasonable.  To that end, courts are required to "balance" a party's need for competent experts with the need to protect the opposing party from being "unfairly burdened by excessive ransoms which produce windfalls for the [party's] experts."  Magee, 172 F.R.D. at 645 (internal citations and quotation marks omitted).

Balancing these competing interests often requires a court to make a determination regarding a "reasonable fee."  In determining a "reasonable" fee, courts generally consider the following factors:

> (1) the witness' area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

Fisher-Price, 217 F.R.D. at 333; see also Royal Maccabees Life Ins. Co. v. Malachinski, 2001 WL 290308, at *16 (N.D. Ill. March 20, 2001) (unreported) (citing McClain v. Owens-Corning Fiberlas Corp., 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996) (unreported)).  "Implicit in the above factors is that a 'rich' party should not be allowed to agree to pay excessively high fees to its expert in order to prevent a 'poorer' opposing party from being able to afford to depose the expert."  EEOC v. Johnson & Higgins, Inc., 1999 WL 32909,

at *4 (S.D.N.Y. Jan. 21, 1999). Ultimately, however, "it is in the court's discretion to set an amount that it deems reasonable." Fleming v. United States, 205 F.R.D. 188, 190 (W.D. Va. 2000) (citing Hurst v. United States, 123 F.R.D. 319, 321 (D.S.D. 1988)); see also Mendez v. Unum Provident Corp., 2005 WL 1774323, at *1 (N.D. Cal. July 26, 2005); Edin v. The Paul Revere Life Ins. Co., 188 F.R.D. 543, 545 (D. Ariz. 1999) (citing 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, Civil 2d, § 2034 at 469-70 (2d ed. 1994)).

Plaintiffs' motion to set a reasonable fee (Record No. 66) only seeks to reduce the fees requested by two of Defendant Freightliner's experts, Dr. Harry L. Smith and Vince Sayre. Plaintiffs contend that Dr. Smith's hourly rate of $575 and Mr. Sayre's rate of $400 per hour with an appearance fee of $800 are unreasonable.[3] Plaintiffs do not suggest what they think a "reasonable fee" would be but note that the fees requested by these two experts are "double or triple what Plaintiff's expert charges." (Id. at 3.)

Defendant Freightliner recognizes the applicable factors and provides some information in support of them. Arguing that the fees requested are reasonable, Defendant Freightliner contends that its experts are well educated and have provided thorough and detailed expert reports. (Record No. 68 at 4.) Defendant Freightliner further suggests that the nature of the work in this case is highly complex due to the number of factors that had

---

[3] According to Mr. Sayre's Fee Schedule, his time is billed at the rate of $220 per hour, rather than $400 per hour as stated by Plaintiffs. (Record No. 68, Ex. 2 at 7.) However, Mr. Sayre's rate does increase to $200 per half hour if his testimony time exceeds two hours. (Id.) Plaintiffs correctly note that Mr. Sayre charges a minimum of $800 for a trial or deposition appearance. (Id.)

to be evaluated when reconstructing the accident and determining the reasonableness of the truck door and seat belt design.  (Id. at 5.)  Defendant Freightliner notes that its experts "rendered opinions on complex issues that required significant advanced study, research and training."  (Id.)  Finally, Defendant Freightliner points out that its experts are charging the same fees for both parties and that they charge the same fees as requested herein for similar or related matters. (Id. at 5-6.)  According to Defendant Freightliner, taking into account the expenses, time, expertise, education, and abilities of its experts, their fees are reasonable. (Id. at 6.)

### 1.  Dr. Harry L. Smith

The undersigned initially notes that Dr. Smith holds B.S. and M.S. degrees in Civil Engineering from Michigan State University, as well as a Ph.D. degree in Nuclear Engineering from Texas A&M University.  (Record No. 68, Ex. 1 at 1.)  Dr. Smith also obtained an M.D. degree from the University of Texas.  (Id.)  Dr. Smith is the director and principal consultant at Biodynamic Research Corporation ("BRC") in San Antonio, Texas, and is the author of more than forty-five articles.  (Record No. 68 at 3.)  A review of Dr. Smith's *curriculum vitae* reveals that he has extensive experience in complex accident reconstruction and product liability cases.  Dr. Smith has been reconstructing accidents for BRC for twenty years.

There is little doubt that Dr. Smith's area of expertise – accident reconstruction – is indeed a complex one, and that the education and experience necessary to give an informed

opinion is surely of a high level. As noted above, Dr. Smith's expert report is both thorough and detailed. Moreover, Dr. Smith is charging the same fee to both Plaintiffs and Defendant Freightliner. His fee in this case is also the same for similar or related matters.

Nonetheless, and despite Dr. Smith's extensive qualifications, the undersigned finds that his $575 hourly fee is unreasonable. See Edin, 188 F.R.D. at 547 (noting that courts must be on guard against exorbitant expert fees, and retain the ultimate responsibility to keep litigation costs from becoming unreasonable); see also Putnal v. The Guardian Life Ins. Co. of Am., 2005 WL 3532381, at *3 (M.D. Ga. December 22, 2005) (reducing neurologist's requested fee of $700 for the first hour and $1000 for each additional hour to $500 per hour); Silberman v. Innovation Luggage, Inc., 2002 WL 1870383, at *1 (S.D.N.Y. August 13, 2002) ($350 hourly fee upheld for Manhattan-based photography expert with over fifty years experience in photography and licensing); Royal Maccabees, 2001 WL 290308, at *17 (reducing expert's fee from $600 per hour to $250 per hour); Cabana v. Forcier, 200 F.R.D. 9, 15-16 (D. Mass. 2001) (reducing nationally recognized medical toxicologist's fee from $1,180 per hour to $375 per hour); Edin, 188 F.R.D. at 547 (orthopedic surgeon's hourly rate as expert witness reduced to $450); Magee, 172 F.R.D. at 645 (psychiatrist with numerous degrees, publications, board memberships, and past faculty positions was required to reduce hourly fee to $250); McClain, 1996 WL 650524, at *4 (reducing physician's requested hourly fee from $400 to $250 even though his credentials went unchallenged).

It bears emphasizing that Rule 26(b)(4)(C) requires that an expert receive a

"reasonable" fee, and not necessarily one justified under current market conditions. Magee, 172 F.R.D. at 646. In other words, the mandate of Rule 26(b)(4)(C) is not that an adverse expert will be paid his heart's desire, but that he will be paid "a reasonable fee." Putnal, 2005 WL 3532381, at *3 (internal quotation marks and citation omitted); see also Massasoit v. Carter, 227 F.R.D. 264, 267 n.4 (M.D.N.C. 2005) (citing Jochims v. Isuzu Motors, Inc., 141 F.R.D. 493, 497 (S.D. Iowa 1992) ("The Court has a duty to do more than merely determine what the traffic will bear. Rather, it must determine reasonable fees.") Accordingly, after balancing the parties' respective interests, see Magee, 172 F.R.D. at 645, the undersigned finds that $400 per hour is a reasonable rate for Dr. Smith's services.

### 2. Vince Sayre

Like Dr. Smith, Mr. Sayre also possesses impressive credentials. His areas of expertise include civil engineering and accident reconstruction. (Record No. 68 at 3.) He has both a Bachelors degree and a Masters degree in civil engineering and is the recipient of the Federal Highway Administration Post Graduate Fellowship in Highway Safety. (Id.) Mr. Sayre has been an accident reconstructionist and highway safety consultant for almost thirty years and is the author of seven articles on accident reconstruction. (Id.)

Again, there is little doubt that Mr. Sayre's areas of expertise – civil engineering and accident reconstruction – are indeed complex and the education and experience necessary to give an informed opinion is surely of a high level. Mr. Sayre's expert report is both thorough and detailed. Moreover, Mr. Sayre is charging the same fee to both Plaintiffs and

Defendant Freightliner. His fee in this case is also the same for similar or related matters.

As noted above, Mr. Sayre charges $220 per hour. There is nothing unreasonable about this fee. However, Mr. Sayre also charges a minimum of $800 for a deposition appearance; and, his fee increases to $200 per half hour if his testimony time exceeds two hours. (Record No. 68, Ex. 2 at 7.) There is little basis to justify either the $800 appearance fee or the escalating fee provision which nearly doubles Mr. Sayre's normal fee if the deposition lasts more than two hours. Indeed, these provisions seem to produce a windfall for Mr. Sayre while unfairly burdening Plaintiffs with excessive fees. While Mr. Sayre is certainly entitled to be paid a reasonable fee, it is inherently unreasonable to charge a party almost double the normal rate merely because a specific amount of time has passed. Therefore, the appearance fee and an escalating hourly fee after a certain amount of time has elapsed are hereby found to be unreasonable. Accordingly, after balancing the parties' respective interests, see Magee, 172 F.R.D. at 465, Mr. Sayre's fee shall be set at $220 per hour for the entirety of his deposition, with no appearance fee to be charged.

### C. Limiting the Number of Experts

Finally, the undersigned notes that Plaintiffs also request the Court to limit the number of experts that Defendant Freightliner may use. (See Record No. 66.) Plaintiffs, however, provide absolutely no support for this proposition. Plaintiffs do not cite any case law and do not raise a single argument regarding the appropriateness and/or availability of such relief. Accordingly, to the extent that Plaintiffs' motion to set a reasonable fee (Record

No. 66) seeks to limit the number of Defendant Freightliner's experts, it shall be denied.

### III. CONCLUSION

Because Plaintiffs have failed to demonstrate that manifest injustice would otherwise result, Plaintiffs, rather than Defendant Freightliner, must pay reasonable fees to Defendant Freightliner's experts for taking their discovery depositions, but at the revised hourly rates determined by the Court, as set forth below. Accordingly, and the court being otherwise sufficiently advised,

IT IS HEREIN ORDERED AS FOLLOWS:

(1) Plaintiffs' motion to set a reasonable fee for the discovery deposition of Defendant Freightliner's experts and/or to limit the number of experts (Record No. 66) is hereby GRANTED IN PART and DENIED IN PART.

(2) Plaintiffs' motion (Record No. 66) is GRANTED to the extent that it seeks to set a reasonable fee for two of Defendant Freightliner's experts, Dr. Harry L. Smith and Mr. Vince Sayre.

> (a) Plaintiffs shall pay Dr. Smith at the rate of $400 per hour for his deposition time, rather than $575 per hour as he originally sought.
>
> (b) Plaintiffs shall pay Mr. Sayre at the rate of $220 per hour for his deposition time, with no appearance fee and no escalating fee after a certain amount of time.

(3) Plaintiffs' motion (Record No. 66) is DENIED to the extent that it seeks to

have the burden of paying the fees requested by Defendant Freightliner's experts for giving their discovery depositions shifted back to Defendant Freightliner.

 (4) Plaintiffs' motion (Record No. 66) is further DENIED to the extent that it seeks to limit the number of experts that Defendants may use.

 (5) In addition to regular service by mail, a copy of this order shall be transmitted forthwith by facsimile to all counsel of record who will not receive an electronic copy of same.

 Signed June 13, 2006.

Signed By:
*Peggy E. Patterson* PEP
United States Magistrate Judge

Date of Entry and Service: